## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| KERRESHA ATKINSON, individually and on behalf of all others similarly situated, | **Case No. 2:22-cv-11284-DPH-KGA** FLSA Collective Action Fed. R. Civ. P. 23 Class Action |
| v. | Judge Denise Page Hood |
| TRINITY HEALTH CORPORATION | Magistrate Judge Kimberly G. Altman |

## ATKINSON'S UNOPPOSED MOTION TO APPROVE SETTLEMENT AGREEMENT

Kerresha Atkinson requests the Court approve the settlement reached in this Fair Labor Standards Act (FLSA) case. The settlement represents the successful culmination of Plaintiff's and Plaintiff's counsel's investigation, litigation, and negotiation of this case. It completely resolves Plaintiff's, and the rest of the proposed collective's, claims at issue in this lawsuit. The settlement is fair and reasonable in light of the inherent risks of litigation and trial, and it will provide meaningful relief to Atkinson and the similarly situated employees of Trinity Health of New England Corporation, Inc., a subsidiary of Defendant Trinity Health Corporation,[1] who opt-into the Settlement. Trinity has defended the claims in this lawsuit and continues to deny any wrongdoing, the violation of any federal or state wage-and-hour law, and any damages at issue.

For these reasons, settlement of this matter is in the best interest of Atkinson

---

[1] Trinity Health of New England, Inc. and Trinity Health Corporation are referred to jointly throughout this motion as "Trinity."

and the proposed collective members. The Court should approve the Parties' Settlement Agreement and dismiss Plaintiff's claims with prejudice.

The motion is supported by the accompanying memorandum and exhibits.

Respectfully submitted,

*/s/ Matthew S. Parmet*

By: _____

**Matthew S. Parmet**
TX Bar # 24069719
**PARMET PC**
2 Greenway Plaza, Ste. 250
Houston, TX 77046
phone713 999 5228
matt@parmet.law

**Michael Hanna, Esq.**
MI Bar # P81462
**MORGAN & MORGAN, P.A.**
2000 Town Center, Suite 1900
Southfield, MI 48075
Telephone: (313) 739-1951
Facsimile: (313) 739-1975
Email: mhanna@forthepeople.com

**Attorneys for Plaintiff**

CERTIFICATE OF CONFERENCE

Prior to filing this motion, I conferred with Defendant's counsel, who confirmed Defendant is unopposed to the requested relief.

*/s/ Matthew S. Parmet*

_____

Matthew S. Parmet

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| KERRESHA ATKINSON, individually and on behalf of all others similarly situated, | **Case No. 2:22-cv-11284-DPH-KGA** FLSA Collective Action Fed. R. Civ. P. 23 Class Action |
| v. | Judge Denise Page Hood |
| TRINITY HEALTH CORPORATION | Magistrate Judge Kimberly G. Altman |

**ATKINSON'S MEMORANDUM IN SUPPORT OF
UNOPPOSED MOTION TO APPROVE SETTLEMENT AGREEMENT**

Respectfully submitted,

**PARMET PC**
   Matthew S. Parmet
   TX Bar # 24069719
2 Greenway Plaza, Ste. 250
Houston, TX 77046
phone713 999 5228
matt@parmet.law

**MORGAN & MORGAN, P.A.**
   Michael Hanna, Esq.
   MI Bar # P81462
2000 Town Center, Suite 1900
Southfield, MI 48075
Telephone: (313) 739-1951
Facsimile: (313) 739-1975
Email: mhanna@forthepeople.com

**Attorneys for Plaintiff**

TABLE OF CONTENTS

A.   SUMMARY ........................................................................................ 1

B.   FACTUAL & PROCEDURAL BACKGROUND ................................................ 1

C.   THE SETTLEMENT AGREEMENT .......................................................... 3

D.   ARGUMENT & AUTHORITIES ............................................................... 4

1.   The Parties have agreed to the terms of the Settlement Agreement. .......... 4

2.   The Settlement represents a reasonable compromise of this litigation and should be approved ...................................................................... 6

2.1.   Factor 1: There was no fraud or collusion in reaching the settlement.. 6

2.2.   Factors 2-4: If not resolved, further, extensive litigation would follow. ...................................................................................... 7

2.3.   Factor 5: Settlement is in the best interest of Plaintiff and the collective. ...................................................................................... 9

2.4.   Factor 6: In an FLSA settlement, there are no absent class members. 10

2.5.   Factor 7: The public interest is served by settlement. ..................... 11

3.   Notice should issue to the proposed collective. ................................. 12

4.   The Court should allow a service award for the Named Plaintiff. ........... 12

5.   Plaintiff's attorneys' fees and litigation expenses are part of the settlement. ...................................................................................... 14

5.1.   The fees included in the settlement agreement are squarely within a reasonable percentage range. ................................................... 16

5.2.   Factor 1: Value of the benefit provided. ..................................... 16

5.3.   Factor 2: Value of services on an hourly basis. ............................ 17

5.4.   Factor 3: Contingent nature of fees. ......................................... 22

5.5.   Factor 4: Society's interest in compensating successful attorneys. .... 23

5.6.   Factor 5: Complexity of the litigation ....................................... 24

6.   Plaintiff's counsel is entitled to recover reasonable costs and expenses. 24

E.   CONCLUSION ................................................................................. 25

TABLE OF AUTHORITIES

## Cases

*Askew v. Inter-Cont'l Hotels Corp.*, 620 F.Supp.3d 643 (W.D. Ky. 2022) ...........................4

*Barnes v. Winking Lizard, Inc.*, No. 1:18CV952, 2019 WL 1614822 (N.D. Ohio Mar. 26, 2019) .....................................................................................................................18, 23

*Blackburn v. Conduent Com. Sols. LLC*, No. 1:19-CV-1229-RP, 2020 WL 9810023 (W.D. Tex. Dec. 22, 2020) ............................................................................................... 14

*Blanchard v. Bergeron*, 489 U.S. 87, 93, (1989) .................................................... 23

*Boston & Maine Corn. v. Sheehan. Phinney, Bass & Green, P.A.*, 778 F.2d 890 (1st Cir. 1985) ............................................................................................................. 21

*Bowling v. Pfizer, Inc.*, 922 F. Supp. 1261 (S.D. Ohio 1996) ............................... 16

*Brittmon v. Upreach LLC*, No. 2:17-cv-219, 2018 WL 7889855 (S.D. Ohio Nov. 8, 2018) ............................................................................................................. 18

*Caligiuri v. Symantec Corp.*, 855 F.3d 860 (8th Cir. 2017) ................................. 13

*Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003 (6th Cir. 2023) ................ 12

*Coach, Inc. v. Goodfellow*, No. 2:10-cv-02410-V, 2012 WL 12868277 (W.D. Tenn. May 22, 2012) .................................................................................................... 23

*Cosgrove v. Sullivan*, 759 F.Supp. 166 (S.D.N.Y. 1991) ....................................... 21

*Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977) ..................................................... 9

*Crosby v. Bowater Inc. Ret. Plan*, 262 F.Supp.2d 804 (W.D. Mich. 2003) ..................... 22

*Daoust v. Maru Rest., LLC*, No. 17-CV-13879, 2019 WL 2866490 (E.D. Mich. July 3, 2019) .................................................................................................... 15

*Di Giacomo v. Plains All Am. Pipeline*, No. Civ.A.H−99−4137, Civ.A.H−99−4212, 2001 WL 34633373 (S.D. Fla. Dec. 19, 2001) ......................................................... 21

*Dillow v. Home Care Network, Inc.*, No. 1:16-cv-612, 2018 WL 4776977 (S.D. Ohio Oct. 3, 2018) ............................................................................................................. 18

*Domingue v. Sun Elec. & Instrumentation, Inc.*, No. CIV.A. 09-682, 2010 WL 1688793 (M.D. La. Apr. 26, 2010) .............................................................................................. 7

*Evans v. Jeff D.*, 475 U.S. 717 (1986) ..................................................................... 5

*Fegley v. Higgins*, 19 F.3d 1126 (6th Cir. 1994) ...............................................14, 23

*Feiertag v. DDP Holdings, LLC*, No. 14-CV-2643, 2016 WL 4721208 (S.D. Ohio Sep. 9, 2016) ................................................................................................................18

*Fitzgerald v. P.L. Mktg., Inc.*, No. 217CV02251SHMCGC, 2020 WL 3621250, at *10 (W.D. Tenn. July 2, 2020).................................................................................15

*Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269 (6th Cir. 2016)................................. 16

*Glass v. UBS Financial Servs., Inc.*, No. C-06-4068, 2007 WL 221862 (N.D. Cal. 2007) 14

*Hall v. ProSource Techs., LLC*, No. 14-CV-2502 (SIL), 2016 WL 1555128 (E.D.N.Y. Apr. 11, 2016) .................................................................................................. 21

*Harvey v. Cmty. Health Network, Inc.*, No. 1:22-cv-000659-RLM-MJD, 2023 WL 3240878 (S.D. Ind. May 3, 2023) ................................................................................ 9

*Helms v. Morton Buildings, Inc.*, No. 3:18-CV-01281, 2020 WL 13468848 (M.D. Tenn. Apr. 15, 2020) ...............................................................................................18

*Hensley v. Eckerhart*, 461 U.S. 424 (1983)....................................................... 14, 16

*Hiser v. NZone Guidance, LLC*, No. 1:18-CV-1056-RP, 2021 WL 2934896 (W.D. Tex. Jan. 25, 2021)................................................................................................. 5

*In re Aremissoft Corp. Sec. Litig.*, 210 F.R.D. 109 (D.N.J. 2002)........................................ 21

*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003) .............................24

*In re Cendant Corp. Prides Litig.*, 51 F.Supp.2d 537 (D.N.J. 1999) ................................. 21

*In re Charter Communications, Inc., Sec. Litig.*, No. MDL 1506, 4:02–CV–1186 CAS, 2005 WL 4045741 (E.D. Mo. June 30, 2005) .............................................................. 21

*In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366 (S.D. Ohio 1990) .... 14

*In re Flint Water Cases*, 583 F.Supp.3d 911 (E.D. Mich. 2022) .......................................... 16

*In re Oil Spill by Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, 910 F.Supp.2d 891 (E.D. La. 2012) ...................................................................... 5

*In re Rite Aid Corp. Secs. Litig.*, 362 F.Supp.2d 587 (E.D. Pa. 2005) .................................. 21

*In re RJR Nabisco*, 1992 WL 210138 (S.D.N.Y. Aug.24, 1992) ........................................ 21

*Klier v. Elf Atochem North Am., Inc.*, 658 F.3d 468 (5th Cir. 2011) ........................................ 5

*Love v. Gannett Co. Inc.*, No. 3:19-CV-296-BJB-RSE, 2021 WL 4352800 (W.D. Ky. Sept. 24, 2021).............................................................................................18

*Lucken Family Ltd. P'ship, LLLP v. Ultra Res., Inc.*, No. 09-cv-01543-REB-KMT, 2010 WL 5387559 (D. Colo. Dec. 22, 2010).......................................................................13

*Martinez v. Blue Star Farms, Inc.*, 325 F.R.D. 212 (W.D. Mich. 2018) ............................... 19

*McClean v. Health Sys., Inc.*, No. 6:11-CV-03037-DGK, 2015 WL 12513703 (W.D. Mo. Aug. 4, 2015) ...........................................................................................................13

*Mercer v. Knox Educ. Serv. Ctr.*, No. 2:21-CV-5092, 2022 WL 7482593, at *1 (S.D. Ohio Oct. 13, 2022) ......................................................................................................... 4

*Merkner v. AK Steel*, No. 1:09–CV–423–TSB (S.D. Ohio Jan. 10, 2011) ......................... 22

Parker v. Anderson, 667 F.2d 1204, 1209 (5th Cir. 1982) ............................................... 6

*Peck v. Moen Inc.*, No. 1:22-cv-02123-DAR, ECF No. 21 (N.D. Ohio Nov. 1, 2023) ...... 12

*Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513 (6th Cir. 1993) ...........................15

*Roberts v. Texaco*, Inc., 979 F.Supp. 185, 200 (S.D.N.Y. 1997) .......................................... 21

*Salinas v. United States Xpress Enters., Inc.*, No. 1:13-cv-00245-TRM-SKL, 2018 WL 1477127 (E.D. Tenn. Mar. 8, 2018) .................................................................................18

*Sandras v. Expeditors and Prod. Servs. Co.*, C.A. No. 16-0239, 2019 WL 658819 (W.D. La. Feb. 13, 2019) ..................................................................................................... 10

*Scobey v. General Motors, LLC*, No. 2:20-cv-12098-DPH-RSW, ECF No. 20 (E.D. Mich. Oct. 28, 2021) ......................................................................................................... 16

*Shaw v. Toshiba America Information Systems, Inc.*, 91 F.Supp.2d 942 (E.D. Tex. 2000) ..17

*Stevens v. PepsiCo Inc.*, No. 7:22-cv-00802-NSR, ECF No. 73 (S.D.N.Y. Dec. 2, 2022) 10

*Swigart v. Fifth Third Bank*, No. 1:11-CV-88, 2014 WL 3447947 (S.D. Ohio July 11, 2014) .............................................................................................................15, 24

*Toliver v. Jbs Plainwell, Inc.*, No. 1:11-cv-302, 2015 WL 11255451 (W.D. Mich. Aug. 20, 2015) ........................................................................................................................24

*Toliver v. JBS Plainwell, Inc.*, No. 1:11-CV-302, 2016 WL 165031 (W.D. Mich. Jan. 14, 2016) ........................................................................................................................ 19

*Van Vranken v. Atlantic Richfield Co.*, 901 F.Supp. 294 (N.D. Cal. 1995) ........................... 14

*Venable v. Am. Consulting and Testing Inc.*, No. 6:20-cv-01232, 2022 WL 595738 (W.D. La. Feb. 25, 2022) ..................................................................................................... 10

*Ware v. CKF Enterprises, Inc.*, No. CV 5:19-183-DCR, 2020 WL 2441415 (E.D. Ky. May 12, 2020) ........................................................................................................................18

*Wineland v. Casey's Gen. Stores, Inc.*, 267 F.R.D. 669 (S.D. Iowa 2009) ...............................13

**Statutes**

29 U.S.C. 216................................................................................................ 12, 14

**Other Authorities**

STATE BAR OF MICHIGAN, 2023 Economics of Law Survey Results, https://www.michbar.org/file/pmrc/pdfs/2_2023EOL_SurveyResults.pdf ........20

USA Today, *Ransomware attack on Kronos could disrupt how companies pay, manage employees for weeks*, https://www.usatoday.com/story/tech/2021/12/13/kronos-ransomware-attack-2021/6501274001/ (Dec. 13, 2021)............................................... 2

**Treatises**

FEDERAL JUDICIAL CENTER, MANUAL FOR COMPLEX LITIGATION (4th) ...................... 19

A.   SUMMARY

Kerresha Atkinson requests the Court approve the settlement reached in this Fair Labor Standards Act (FLSA) case. The settlement represents the successful culmination of Plaintiff's and Plaintiff's counsel's investigation, litigation, and negotiation of this case. It completely resolves Plaintiff's, and the rest of the proposed collective's, claims at issue in this lawsuit. The settlement is fair and reasonable in light of the inherent risks of litigation and trial, and it will provide meaningful relief to Atkinson and the similarly situated employees of Trinity Health of New England Corporation, Inc., a subsidiary of Defendant Trinity Health Corporation,[1] who opt-into the Settlement. Trinity has defended the claims in this lawsuit and continues to deny any wrongdoing, the violation of any federal or state wage-and-hour law, and any damages at issue.

For these reasons, settlement of this matter is in the best interest of Atkinson and the proposed collective members. The Court should approve the Parties' Settlement Agreement and dismiss Plaintiff's claims with prejudice.

B.   FACTUAL & PROCEDURAL BACKGROUND

Trinity is a healthcare corporation which operates multiple hospitals and healthcare facilities to the public. ECF No. 1, ¶¶ 30-31. To track time for its hourly employees, calculate overtime, and process payroll, Trinity used Kronos, a cloud-based timekeeping and payroll system operated and maintained by the Ultimate Kronos Group, Inc. ("UKG"). *Id.* at ¶ 59.

---

[1] Trinity Health of New England, Inc. and Trinity Health Corporation are referred to jointly throughout this motion as "Trinity."

On December 11, 2021, the Kronos cloud system became inoperable, which UKG reported was caused by a cyberattack. USA Today, *Ransomware attack on Kronos could disrupt how companies pay, manage employees for weeks*, https://www.usatoday.com/story/tech/2021/12/13/kronos-ransomware-attack-2021/6501274001/ (Dec. 13, 2021).

During its Kronos outage, Trinity first utilized hours from the previous payroll and added 4 hours to it to pay employees for the first payroll cycle affected by the outage. Subsequently, Trinity built a "local Kronos system" to capture time punches which were then utilized to pay employees. The Kronos outage for Trinity affected pay periods lasting from approximately December 5 to 23, 2021. Once Trinity gained access to the data stored in the Kronos system, the Company engaged in a comprehensive reconciliation process to determine the exact amount of wages owed based on the actual hours worked during the impacted pay periods.

For the time period corresponding to the Kronos outage, Trinity made adjustment payments to 2,480 non-exempt employees in the aggregate amount of $724,911, including initial underpayments or payments not paid on the normal pay date wages allegedly owed. Any portion of this aggregate amount determined by Trinity to be still owing was paid at the conclusion of the reconciliation, although Plaintiff contends it was not paid on time and that, accordingly, liquidated damages are owed. Trinity further contends that of the amount allegedly underpaid, at least one-third of that amount was not related to the Kronos outage but were normal payroll corrections that happened on a regular basis. If true, then the amount at

issue is reduced to approximately $483,225.[2]

On June 9, 2022, Atkinson brought claims to recover the unpaid wages, including overtime, and liquidated damages owed to Atkinson and Trinity's allegedly similarly situated employees as a result of the Kronos Outage. After substantial efforts between the Parties and their counsel, the Parties ultimately agreed to exchange information and participate in mediation to determine if this action could be settled on a global basis, to try to resolve this matter.

On August 9, 2023, after Trinity had produced payroll and timekeeping data and other information regarding the Kronos Outage, the Parties participated in a full-day mediation with Dennis Clifford, a highly regarded labor law neutral with significant experience in labor and employment and wage-and-hour litigation. With the assistance of Mr. Clifford, the Parties were able to reach a preliminary framework of a settlement at the mediation. Since that time, after substantial further work between the Parties and their counsel and finalizing certain terms and entering into this Settlement Agreement now before the Court.

## C. THE SETTLEMENT AGREEMENT

The Settlement Agreement (Exhibit 1) has been filed as an attachment to this motion.[3] The Settlement will provide a fair, reasonable, and adequate recovery to all

---

[2] Trinity also contends that of this remaining amount, not all, the wages at issue would be protected under the FLSA and thus liquidated damages would not be owed on this complete amount.  Plaintiff disputes this contention.

[3] Employee numbers have been redacted from Exhibit C to the Settlement Agreement because: (1) the individuals have not yet opted into the lawsuit; and (2) connecting each person's identity to their allocations is not necessary to determine the Motion.

non-exempt employees of Trinity's subsidiary Trinity Health of New England Corporation, Inc., who choose to opt-in to it. Any of these current or former employees, who are non-exempt individuals working at this subsidiary and who were impacted by the Kronos Outage will be notified of, and eligible to join, the settlement. Under the settlement, Trinity will pay all collective members who were allegedly paid late a proportional amount of the delayed wages as liquidated damages.

The settlement does not create any complicated claims process. Once the settlement is approved, it will be administered by an independent settlement administrator, who will send the proposed notice and claim form to all putative collective members by U.S. mail. To opt-into the settlement, putative collective members need only complete and return a claim form.

D.   ARGUMENT & AUTHORITIES

1.   **The Parties have agreed to the terms of the Settlement Agreement.**

Sixth Circuit precedent allows, but does not mandate, judicial review of FLSA settlement agreements. *Mercer v. Knox Educ. Serv. Ctr.*, No. 2:21-CV-5092, 2022 WL 7482593, at *1 (S.D. Ohio Oct. 13, 2022); *see also Askew v. Inter-Cont'l Hotels Corp.*, 620 F.Supp.3d 635, 643 (W.D. Ky. 2022) ("[T]he Court concludes that FLSA is not an 'applicable federal statute' under Rule 41(a)(1)(A) that prevents dismissal at the parties' behest."). "To approve a settlement, a court must conclude that it is fair, reasonable, and adequate and that the settlement resolves a bona fide dispute under the FLSA" *Id.* (internal quotation omitted). "The primary focus of the Court's inquiry in deciding whether to approve the settlement of a FLSA collective action is

on ensuring that an employer does not take advantage of its employees in settling their claim for wages." *Hiser v. NZone Guidance, LLC*, No. 1:18-CV-1056-RP, 2021 WL 2934896, at *2 (W.D. Tex. Jan. 25, 2021) (quotation omitted).

The Parties have fully executed the proposed settlement agreement for review. The Court has the authority to approve the settlement or decline approval—or even to suggest additional or modified terms that would meet with the Court's approval—but cannot modify the agreement itself. *See Evans v. Jeff D.*, 475 U.S. 717, 727 (1986) ("[T]he power to approve or reject a settlement negotiated by the parties before trial does not authorize the court to require the parties to accept a settlement to which they have not agreed."); *Cochran v. Zeon D.P., LLC*, 638 F. Supp. 2d 759, 761 (W.D. Ky. 2009) ("While the Court … has broad discretion to approve a settlement, it may not simply impose changes upon or modify the terms of the settlement. Thus, the Court may not fashion its own settlement by highlighting certain provisions as fair or reasonable and striking others it finds unreasonable." (internal citation omitted)); *Bronson v. Bd. of Educ. of City Sch. Dist. of City of Cincinnati*, 604 F. Supp. 68 (S.D. Ohio 1984) ("This Court does **not** have the power to order specific changes or modifications to be made in the agreement." (emphasis in original)); *accord Klier v. Elf Atochem North Am., Inc.*, 658 F.3d 468, 475 (5th Cir. 2011) (holding, in a class action, "the court cannot modify the bargained-for terms of the settlement agreement"); *In re Oil Spill by Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, 910 F.Supp.2d 891, 944 (E.D. La. 2012) ("[T]he Court is not authorized to insist upon changes that, in its judgment, might lead to a superior settlement."), *aff'd sub nom. In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014), *reh'g en banc denied sub nom. In re*

*Deepwater Horizon—Appeals of the Economic and Property Damage Class Action Settlement*, 756 F.3d 320 (5th Cir. 2014), *cert. denied sub nom. BP Exploration & Prod, Inc. v. Lake Eugenie Land & Dev., Inc.*, 135 S.Ct. 754 (2014).

**2.    The Settlement represents a reasonable compromise of this litigation and should be approved.**

There is a strong presumption in favor of finding a settlement fair, particularly where it is the negotiated result of an adversarial proceeding. *Sims v. Hous. Auth. City of El Paso*, 2012 WL 10862119, at *3 (W.D. Tex. Feb. 29, 2012). The key question is "whether the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 903 (S.D. Ohio 2001). Although the class-action provisions of Federal Rule of Civil Procedure 23 do not apply to FLSA collective actions, courts have looked to the six factors used in class actions for evaluating FLSA settlement proposals: (1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery completed; (4) the likelihood of success on the merits; (5) the opinions of collective counsel and the claims representative; (6) the reaction of absent class members; and (7) the public interest. *See O'Bryant v. ABC Phones of N. Carolina, Inc.*, No. 19-CV-02378-SHM-TMP, 2020 WL 7634780 (W.D. Tenn. Dec. 22, 2020) (collecting cases).

**2.1.    Factor 1: There was no fraud or collusion in reaching the settlement.**

The Settlement was reached after the Parties and their counsel attended a full-day mediation with nationally recognized wage and hour class/collective action mediator Dennis Clifford on August 9, 2023. The Parties mutually selected

Mr. Clifford due to his knowledge and experience in employment matters, including cases arising under the FLSA. Following the mediation, Counsel for the Parties negotiated for several more months on specific terms of the settlement before ultimately arriving at the Settlement Agreement attached here.

Thus, the settlement is a product of the extended negotiations between the Parties, including arms-length negotiation of counsel and mediation with Mr. Clifford. There was no fraud or collusion by any participant. *See* Ex. 2, Parmet decl.

### 2.2. Factors 2-4: If not resolved, further, extensive litigation would follow.

This case was settled during active litigation between the Parties. "[T]hat this settlement is the negotiated result of an adversarial proceeding is an indication of its fairness." *Domingue v. Sun Elec. & Instrumentation, Inc.*, No. CIV.A. 09-682, 2010 WL 1688793, at *1 (M.D. La. Apr. 26, 2010). Indeed, it was resolved only after substantial investigation and work by the Parties and their counsel. The work undertaken by Atkinson and Plaintiff's counsel included:

- Investigation of Trinity and its management and structure;

- Review of Department of Labor database and records;

- Review of court records for similar or related cases involving Trinity and its related corporate entities;

- Review of legal authority, including court orders and administrative guidance, regarding legal issues before and during the course of the lawsuit;

- Drafting, filing, and serving Plaintiff's original complaint;

- Reviewing Plaintiff and opt-in Plaintiff's documents and production;

- Interviewing Plaintiff and potential opt-ins;

- Reviewing Trinity's production, including payroll and time information and data;

- Analyzing payroll and time information and data for Atkinson and the potential collective including creating a damage model for the data;

- Attending a full-day mediation; and

- Negotiating and finalizing the Parties' Settlement Agreement and approval documents.

If the case were not settled, there would be extensive work to come, including written discovery to and from all Parties and associated discovery disputes, certification of the FLSA collective, depositions of both sides, dispositive motions, and questions regarding applicability of the FLSA, Plaintiff's damages, Trinity's good faith and willfulness, and decertification.

Under the unique facts presented by this case, the compromised settlement represents a fair compromise of the claims. Trinity planned significant defenses to liquidated damages. Trinity intended to claim it was a victim of the cyberattack that shut down the Kronos system and that it acted in good faith after the outage began. The Parties could have litigated these issues for years, including through discovery, trial, and appeal, with no guarantee of success for Plaintiff and the proposed collective. The Settlement avoids this significant risk and provides substantial benefits to the collective members that opt-in—which include all eligible employees.

In all, the Parties engaged in significant work, recognized and appreciated the risks in proceeding if this case was not settled, and (Plaintiff in particular) recognized that the settlement represented a compromise of the range and certainty of damages.

### 2.3. Factor 5: Settlement is in the best interest of Plaintiff and the collective.

That this Settlement in the best interest of Atkinson and the putative collective is an opinion shared by both Atkinson and Plaintiff's counsel. Ex. 2, Parmet decl. Plaintiff's counsel has served as lead or co-lead counsel in numerous wage-and-hour actions with multiple plaintiffs. For example, Plaintiff's counsel, Matthew S. Parmet, has successfully recovered unpaid overtime and associated damages on behalf of many workers, including many large-scale wage-and-hour class/collective actions. *See*, *e.g.*, Ex. 2, Select Wage-and-Hour Settlements. Trinity's counsel, likewise has extensive experience in defending employers in all manner of employment law issues, including FLSA claims.

Because Plaintiff is represented by experienced counsel, the Court may rely upon their judgment as to the benefits of settlement in relation to the risks of litigation and trial. *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977). Plaintiff's counsel's experience in, and knowledge of, wage-and-hour cases has been noted by various courts. *Harvey v. Cmty. Health Network, Inc.*, No. 1:22-cv-000659-RLM-MJD, 2023 WL 3240878, at *2 (S.D. Ind. May 3, 2023) (preliminarily approving a wage-and-hour class action settlement and recognizing both Morgan & Morgan and Parmet PC as "experienced counsel familiar with the applicable facts and law"),

final approval granted by ECF No. 102 (Sept. 8, 2023); *Stevens v. PepsiCo Inc.*, No. 7:22-cv-00802-NSR, ECF No. 73, at *4, 6 (S.D.N.Y. Dec. 2, 2022) (acknowledging wage-and-hour Plaintiff's counsel, including Morgan & Morgan and Parmet PC, as "competent and experienced counsel" that achieved a "commendable result, given the complexities of this Litigation"); *Venable v. Am. Consulting and Testing Inc.*, No. 6:20-cv-01232, 2022 WL 595738, at *4 (W.D. La. Feb. 25, 2022) ("Plaintiffs' counsel is well known to the Court and has prosecuted many such [wage-and-hour] claims with similar professionalism and skill."), *adopted by* 2022 WL 741698 (W.D. La. Mar. 10, 2022); *Sandras v. Expeditors and Prod. Servs. Co.*, C.A. No. 16-0239, 2019 WL 658819, at *2 (W.D. La. Feb. 13, 2019) ("This case has been litigated by competent lawyers on each side who enjoy great respect in their field from both sides of the aisle. Counsel for Plaintiff has appeared multiple times in this Court with success on most, if not all, occasions."), *adopted by* 2019 WL 1446481 (W.D. La. Mar. 29, 2019).

Plaintiff's counsel agrees the Settlement Agreement is a fair and reasonable compromise of a bona fide dispute regarding the claims alleged by Atkinson in light of the procedural posture of the case, the litigation risks, and the litigation costs to Atkinson and the putative collective. Ex. 2, Parmet decl., at § D. The Parties have engaged in arm's-length and extended settlement negotiations. Ex. 2, Parmet decl., at § D. Because the settlement is a fair and reasonable compromise given the considerations outlined above, the Court should approve the Settlement.

### 2.4.   Factor 6: In an FLSA settlement, there are no absent class members.

The settlement in this case resolves the claims at issue through only the FLSA's opt-in collective action mechanism, rather than Rule 23. Each putative

collective member will receive a notice advising them of the settlement so they can decide for themselves whether to opt-in and accept the settlement payment offered by Trinity. Thus, there are no "absent" class members because all plaintiffs must affirmatively opt-into the case. *Lawson v. Procare CRS, Inc.*, No. 18-cv-00248-TCK-JFJ, 2019 WL 112781, at *3 (N.D. Okla. Jan. 4, 2019) ("Unlike settlements of class actions, cases involving infants or incompetent persons, or settlements of non-bona fide disputes, FLSA claims are opt-in, meaning that the named Plaintiffs are represented by counsel and are actively engaged with the litigation."). And because there is no preliminary approval stage, with notice to "absent" class members, there are not even any objections or exclusions the Court could consider, as in a proposed Rule 23 settlement. Any putative collective action member may decline to participate in the settlement, thereby preserving their FLSA claim. For this reason, Factor 6 is not triggered here.

### 2.5. Factor 7: The public interest is served by settlement.

The public interest is generally served by settling disputed claims. *O'Bryant v. ABC Phones of N. Carolina, Inc.*, No. 19-CV-02378-SHM-TMP, 2020 WL 7634780, at *14 (W.D. Tenn. Dec. 22, 2020). This is particularly true given the additional public interest in enforcing compliance with wage-and-hour laws. *See id.* Of course, every case carries inherent risk to litigants, and this case is no different. *See id.* And even where liability appears clear, settlement is still favored because it conserves the parties' and judicial resources. *Ware v. CKF Enterprises, Inc.*, No. CV 5:19-183-DCR, 2020 WL 2441415, at *14 (E.D. Ky. May 12, 2020). This factor also weighs in favor of settlement.

3.      **Notice should issue to the proposed collective.**

As part of the Settlement Agreement, the Parties consent for notice of this case and the Settlement to issue to the following collective, pursuant to the FLSA, 29 U.S.C. 216(b):

> Named Plaintiff and the 2,479 other current or former non-exempt employees of Trinity Health Of New England Corporation, Inc. (a subsidiary of Defendant) who received an adjusted payment in the months following the December 2021 Kronos ransomware attack, where such adjusted payments may have corresponded to temporary underpayments during the Kronos ransomware attack resulting from Trinity Health Of New England Corporation, Inc.'s temporary loss of access to time records and the related disruptions to payroll operations.

The common pay practice at issue in this case, detailed above, demonstrates a "strong likelihood" that Atkinson and the proposed collective are similarly situated within the meaning of the FLSA to warrant notice to issue. *Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003, 1011 (6th Cir. 2023). The Parties' agreement to notice should also be given effect. *See, e.g., Peck v. Moen Inc.*, No. 1:22-cv-02123-DAR, ECF No. 21 (N.D. Ohio Nov. 1, 2023) (adopting parties' stipulation for FLSA notice under *Clark* standard).

The notice provides information in clear and concise terms on the lawsuit itself, the terms and conditions of the settlement, the relief the settlement will provide collective members that opt-in, and the procedure for opting-in to the settlement by submitting a consent to join form.

4.      **The Court should allow a service award for the Named Plaintiff.**

The terms of the Settlement allow the Named Plaintiff, Kerresha Atkinson, to receive a reasonable service award, to be paid from the gross settlement amount for

initiating the investigation and litigation of this matter, serving as a claims representative, responding to counsel's questions, providing documents, reviewing information and data, participating in settlement discussions, reviewing the Settlement, and otherwise assisting counsel. The service award also provides consideration for a general release.

Courts routinely approve service awards to compensate representative plaintiffs for the services they provided and the risks they incurred during the course of the class or collective action litigation. *See, e.g., Caligiuri v. Symantec Corp.*, 855 F.3d 860, 868 (8th Cir. 2017) (approving $10,000 service award to each named plaintiff); *Koszyk v. Country Fin.*, No. 16 Civ. 3571, 2016 WL 5109196, at *6-7 (N.D. Ill. Sept. 16, 2016) (approving $10,000 service payments for each of seven plaintiffs in a FLSA collective action); *Wineland v. Casey's Gen. Stores, Inc.*, 267 F.R.D. 669, 677 (S.D. Iowa 2009) (same); *McClean v. Health Sys., Inc.*, No. 6:11-CV-03037-DGK, 2015 WL 12513703, at *1 (W.D. Mo. Aug. 4, 2015) (approving $5,000 service award to each named plaintiff); *Castillo v. Morales, Inc.*, No. 2:12-cv-00650, 2015 WL 13021899, at *5 (S.D. Ohio Dec. 22, 2015) (approving $8,000 service award to named plaintiff representative in wage-and-hour case). Service awards are intended to reflect the substantial work performed and risk undertaken by a lead plaintiff, and can often be substantial. *See, e.g., Sanders v. MPRI, Inc.*, No. 5:08-cv-00345-R, ECF No. 180 (W.D. Okla. Oct. 19, 2009) (approving service awards to helpful plaintiffs of up to $14,300); *Lucken Family Ltd. P'ship, LLLP v. Ultra Res., Inc.*, No. 09-cv-01543-REB-KMT, 2010 WL 5387559, at *6 (D. Colo. Dec. 22, 2010) (approving service award of $10,000 as being "well within the range of reasonable incentive awards"); *In re Dun & Bradstreet Credit*

*Servs. Customer Litig.*, 130 F.R.D. 366, 373-74 (S.D. Ohio 1990) (approving incentive awards ranging from $35,000 to $50,000); *Glass v. UBS Financial Servs., Inc.*, No. C-06-4068, 2007 WL 221862, at *16 (N.D. Cal. 2007), *aff'd*, 331 Fed.Appx. 452 (9th Cir. 2009) (approving $25,000 service awards to each named plaintiff); *Van Vranken v. Atlantic Richfield Co.*, 901 F.Supp. 294, 300 (N.D. Cal. 1995) (approving $50,000 service award to lead plaintiff). "Given [Atkinson's] active participation," a service award is reasonable. *Blackburn v. Conduent Com. Sols. LLC*, No. 1:19-CV-1229-RP, 2020 WL 9810023, at *3 (W.D. Tex. Dec. 22, 2020). Consistent with this authority, Atkinson's serviced award should be approved.

**5.    Plaintiff's attorneys' fees and litigation expenses are part of the settlement.**

A portion of the Settlement is allocated to the payment of Plaintiff's attorneys' fees and case expenses. It is entirely appropriate for the issue of attorneys' fees to be settled by the Parties themselves. *See, e.g., Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("Ideally, of course, litigants will settle the amount of a fee.").

The attorney's fees provision of the FLSA exists to enable plaintiffs to employ reasonably competent lawyers without cost to themselves if they prevail, and thereby to help ensure enforcement of the substantive provisions of the Act. 29 U.S.C. §216(b). The provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994).

The Sixth Circuit "require[s] only that awards of attorney's fees by federal

courts in common fund cases be reasonable under the circumstances." *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993). When awarding attorneys' fees from a common fund, "a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results obtained." *Id.* The court may do so by utilizing the percentage of the fund method, as Plaintiff proposes here, which "more accurately reflects the results achieved." *Id.* Indeed, Sixth Circuit district courts have found the percentage of the fund approach is "the **most appropriate** method for determining reasonable attorneys' fees." *Swigart v. Fifth Third Bank*, 2014 WL 3447947, at *5 (emphasis added); *see also Fitzgerald v. P.L. Mktg., Inc.*, No. 217CV02251SHMCGC, 2020 WL 3621250, at *10 (W.D. Tenn. July 2, 2020) ("The percentage of the fund has been the **preferred method** for common fund cases, where there is a single pool of money and each class member is entitled to a share (i.e., a 'common fund')." (emphasis added) (internal citations and quotation marks omitted)); *Daoust v. Maru Rest., LLC*, No. 17-CV-13879, 2019 WL 2866490, at *5 (E.D. Mich. July 3, 2019) ("[T]he amount of fees requested is fair and reasonable using the percentage-of-recovery method, which is consistent with the trend in this Circuit." (internal quotation marks omitted)).

In reviewing the award, the Court may consider the following factors: (1) the value of the benefit rendered to the plaintiff class/collective (that is, the results achieved); (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of

counsel involved on both sides. *Bowling v. Pfizer, Inc.*, 922 F. Supp. 1261, 1280 (S.D. Ohio 1996), *on reconsideration in part*, 927 F. Supp. 1036 (S.D. Ohio 1996), *aff'd sub nom. Arthur Ray Bowling v. Pfizer, Inc.*, 103 F.3d 128 (6th Cir. 1996), *and aff'd*, 102 F.3d 777 (6th Cir. 1996).

### 5.1. The fees included in the settlement agreement are squarely within a reasonable percentage range.

Atkinson requests the Court approve the attorneys' fees agreed upon under the settlement agreement as a percentage of the fund, which amounts to one-third of the common fund benefit obtained for the putative collective. That percentage has been awarded in prior FLSA attorney fee requests approved by this Court. *Scobey v. General Motors, LLC*, No. 2:20-cv-12098-DPH-RSW, ECF No. 20, at PageID 214 (E.D. Mich. Oct. 28, 2021) (Hood, J.).

The common fund consists of the total potential benefit obtained for the collective of $325,000.00. *E.g.*, *In re Flint Water Cases*, 583 F.Supp.3d 911, 947 (E.D. Mich. 2022) ("The Sixth Circuit instructs that the value of the benefit to the class is based 'on the total relief class counsel makes available to all the class members.'" (quoting *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 278 (6th Cir. 2016) (emphasis removed)), *dismissed*, No. 22-1187, 2022 WL 18960956 (6th Cir. Sept. 14, 2022).

### 5.2. Factor 1: Value of the benefit provided.

When evaluating a claim for fees, the "most critical" factor is a party's success in the litigation. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). In this respect, the settlement represents a significant success for Atkinson and the putative collective.

One court, undertaking an analysis of reasonableness of requested attorneys' fees in a class action, considered the comparative data regarding Rule 23 class settlements summarized by the National Economic Research Associates (NERA). *Shaw v. Toshiba America Information Systems, Inc.*, 91 F.Supp.2d 942 (E.D. Tex. 2000). The NERA Study relied upon by *Shaw* showed the average result achieved for class members was only 7% to 11% of claimed damages. Measured against that standard, this settlement is much higher.

Under the settlement, putative collective members who choose to join the settlement, if allegedly not timely paid will receive direct cash payments representing a substantial recovery on their alleged damages. Considering the risks of continued litigation, the settlement provides Atkinson and putative collective members with about 67% of their total possible liquidated damages, which is in addition to the 100% of wages Trinity has already paid to each of them.

Under Plaintiff's theory of the case, Atkinson (and the putative collective) have prevailed in securing valuable compensation for their claims. They acquired a settlement that provides recovery for each Plaintiff and putative collective member. Meanwhile, under Trinity's theory, the putative collective members would be owed nothing. In all, Plaintiff's counsel secured a valuable settlement that provides recovery for each Plaintiff and putative collective member.

### 5.3. Factor 2: Value of services on an hourly basis.

Plaintiff's attorneys' fees are well within precedent in the Sixth Circuit, and, in fact, are on the low end of that range. In common fund cases such as this, including FLSA cases, district courts have approved fees ranging up to 40% of the

collective's gross recovery. *Love v. Gannett Co. Inc.*, No. 3:19-CV-296-BJB-RSE, 2021 WL 4352800, at *7 (W.D. Ky. Sept. 24, 2021) (awarding 40%); *Helms v. Morton Buildings, Inc.*, No. 3:18-CV-01281, 2020 WL 13468848, at *2 (M.D. Tenn. Apr. 15, 2020) (same); *Salinas v. United States Xpress Enters., Inc.*, No. 1:13-cv-00245-TRM-SKL, 2018 WL 1477127, at *1, 7-9 (E.D. Tenn. Mar. 8, 2018) (same); *Brittmon v. Upreach LLC*, No. 2:17-cv-219, 2018 WL 7889855, at *2 (S.D. Ohio Nov. 8, 2018) (same); *Ware v. CKF Enterprises, Inc.*, No. CV 5:19-183-DCR, 2020 WL 2441415, at *16 (E.D. Ky. May 12, 2020) (awarding 1/3); *Barnes v. Winking Lizard, Inc.*, No. 1:18CV952, 2019 WL 1614822, at *4-5 (N.D. Ohio Mar. 26, 2019) (same).

Although not necessary, a contingency award **may** be examined by performing a lodestar cross-check of the fee award. *Barnes*, 2019 WL 1614822, at *6. However, the cross-check is "not required." *Id.*; *Feiertag v. DDP Holdings, LLC*, No. 14-CV-2643, 2016 WL 4721208, at *7 (S.D. Ohio Sep. 9, 2016) ("Performing a cross-check of the attorney-fee request using Class Counsel's lodestar is optional."); *Dillow v. Home Care Network, Inc.*, No. 1:16-cv-612, 2018 WL 4776977, at *6 (S.D. Ohio Oct. 3, 2018) (specifying a lodestar cross-check of percentage of the fund fee award is "unnecessary"). The relatively early settlement of this matter should not be held against Plaintiff's counsel. Plaintiff's counsel efficiently resolved this case by working with Atkinson, defense counsel, and the mediator. They worked to exchange complex damage models and legal authorities, rather than prolong litigation to artificially increase potential fees. As the Manual for Complex

Litigation recognizes, "one purpose of the percentage method is to encourage early settlements by not penalizing efficient counsel, thus ensuring competent counsel continue to be willing to undertake risky, complex, and novel litigation." FEDERAL JUDICIAL CENTER, MANUAL FOR COMPLEX LITIGATION (4th) § 14.121; *see also* *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003) ("[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable and settlement conserves judicial resources.") (internal quotation omitted). The Parties also spent significant time negotiating terms of the settlement, negotiating and exchanging numerous drafts and revisions.

Plaintiff's total lodestar fees are within a reasonable multiplier of the total fees sought. Ex. 2, Parmet decl., at ¶¶ 41-43. The State Bar of Michigan's Economics of Law Survey, "which includes reported billing rates throughout Michigan ... is an acceptable source" for determining a reasonable hourly rate for attorneys' fees in an FLSA case. *Martinez v. Blue Star Farms, Inc.*, 325 F.R.D. 212, 222 (W.D. Mich. 2018) (Green, Mag. J.); *Toliver v. JBS Plainwell, Inc.*, No. 1:11-CV-302, 2016 WL 165031, at *8 (W.D. Mich. Jan. 14, 2016) (Maloney, J.) (same). The Survey divides rates into quartiles, and *Martinez* recognized that, a 75th percentile was the appropriate assignment for an attorney with significant experience in a particular area. *See Martinez*, 325 F.R.D. at 222.

The 2023 Survey sets several relevant benchmarks for an hourly rate in this

matter:[4]

| Category | Attorney | Mean | 75th % | 95th % |
|---|---|---|---|---|
| Practice Classification – Equity Partner/Shareholder | Matthew Parmet | $413 | $500 | $730 |
| Practice Classification – Non-Equity Partner | Michael Hanna | $425 | $525 | $700 |
| Years in Practice – 11 to 15 years | Matthew Parmet & Michael Hanna | $330 | $395 | $575 |
| Grand Rapids Area | --- | $368 | $450 | $625 |
| Field of Practice – Employment law (plaintiff) | --- | $412 | $475 | $650 |
| | | | | |
| Average | Matthew Parmet & Michael Hanna | $380.75 | $455.00 | $645.00 |
| **Overall** | | **$382.25** | **$458.13** | **$641.25** |

Plaintiff's counsel estimates that, to date, a total of at least 150 hours have been devoted by the attorneys working on this case. Ex. 2, Parmet decl. Using the 75% percentile average of $458.13 for all attorneys equates to a total current lodestar of $68,718.75 based on Plaintiff's counsel's estimates. Using the 95% percentile average of $80,171.88 for all attorneys—which Plaintiff's counsel believes is more appropriate given Plaintiff's counsel's experience and dedicated focus to wage-and-hour litigation—equates to a total current lodestar of $147,751.20 based on Plaintiff's counsel's estimates.

Critically, even after approval, Plaintiff's counsel's time in this matter will continue to increase. Plaintiff's counsel will spend time fulfilling Plaintiff's obligations under the settlement agreement, administering the settlement, and responding to Plaintiff's and putative collective members' inquiries. These efforts

---

[4] STATE BAR OF MICHIGAN, 2023 Economics of Law Survey Results, https://www.michbar.org/file/pmrc/pdfs/2_2023EOL_SurveyResults.pdf.

may easily match or surpass the time Plaintiff's counsel has already devoted to this matter. Using the same mid-range hourly rate, at a reasonable estimate total hours of a minimum of 175 hours after administration, Plaintiff's counsel's lodestar would be at $80,171.88 at 75% and $112,218.75 at 95%. *E.g.*, *Hall v. ProSource Techs., LLC*, No. 14-CV-2502 (SIL), 2016 WL 1555128, at *14 (E.D.N.Y. Apr. 11, 2016) ("In determining a reasonable attorneys' fee award, courts are mindful of the fact that the lodestar multiplier will diminish when counsel is required to perform additional work in administering a finalized settlement.") (collecting cases). In all, Plaintiff's counsel's current lodestar has a 1.58 to 1.13 multiplier, which is already within the range of reasonableness and will decrease as this case moves to completion (to 1.35 or as low as a negative lodestar of 0.97 based on Plaintiff's counsel's estimates above). *In re Rite Aid Corp. Secs. Litig.*, 362 F.Supp.2d 587, 589 (E.D. Pa. 2005) (6.96 multiplier); *In re RJR Nabisco*, 1992 WL 210138, at *5-6 (S.D.N.Y. Aug.24, 1992) (6 multiplier); *Cosgrove v. Sullivan*, 759 F.Supp. 166, 167 n.1 (S.D.N.Y. 1991) (8.74 multiplier); *Boston & Maine Corn. v. Sheehan. Phinney, Bass & Green, P.A.*, 778 F.2d 890, 894 (1st Cir. 1985) (6 multiplier); *Roberts v. Texaco*, Inc., 979 F.Supp. 185, 200 (S.D.N.Y. 1997) (5.5 multiplier); *In re Charter Communications, Inc., Sec. Litig.*, No. MDL 1506, 4:02−CV−1186 CAS, 2005 WL 4045741, at *18 (E.D. Mo. June 30, 2005) (5.61 multiplier); *In re Aremissoft Corp. Sec. Litig.*, 210 F.R.D. 109, 134-35 (D.N.J. 2002) (4.3 multiplier ); *In re Cendant Corp. Prides Litig.*, 51 F.Supp.2d 537 (D.N.J. 1999) (5.28 multiplier ), *vacated and remanded*, 243 F.3d 722 (3d Cir.2001), *on remand*, No. 98−2819 (D.N.J. June 11, 2002); *Di Giacomo v. Plains All Am. Pipeline*, No. Civ.A.H−99−4137, Civ.A.H−99−4212, 2001 WL 34633373, at *10−11 (S.D. Fla. Dec. 19, 2001) (5.3 multiplier); *Merkner v. AK Steel*, No. 1:09−CV−423−TSB

(S.D. Ohio Jan. 10, 2011) (5.3 multiplier). The final lodestar analysis yields the following high and low figures:

| Category | Hours | Mean | 75th % | 95th % |
|---|---|---|---|---|
| Overall Average Hourly Rate[5] | --- | $ 382.25 | $ 458.13 | $ 641.25 |
| | | | | |
| Lodestar Current Hours | 150 | $ 57,337.50 | $ 68,718.75 | $ 96,187.50 |
| Lodestar Total Hours Post-Disbursement | 175 | $ 66,893.75 | $ 80,171.88 | $ 112,218.75 |
| | | | | |
| Lodestar Multiplier – Current Hours | 150 | 1.89 | 1.58 | 1.13 |
| Lodestar Multiplier – Total Hours Post-Disbursement | 175 | 1.62 | 1.35 | 0.97 |

### 5.4.    Factor 3: Contingent nature of fees.

Plaintiff's counsel undertook this representation on a purely contingent basis. Plaintiff's counsel thus took on the risk that accompanies contingent-fee representation that the investment of substantial attorney time and resources would be lost, including the prospect of dispositive motions or unfavorable outcomes late in discovery, or even at trial or on appeal. Plaintiff's counsel should be compensated for this risk. *See, e.g., Crosby v. Bowarter Inc. Ret. Plan*, 262 F.Supp.2d 804, 814 (W.D. Mich. 2003) (Enslen, J.) (explaining a contingency justifies a higher fee), *vacated on different grounds sub nom. Crosby v. Bowater Inc. Ret. Plan for Salaried Emps. of Great N. Paper, Inc.*, No. 03-1808, 2004 WL 5389834 (6th Cir. Dec. 29, 2004). "There is a public interest in ensuring that attorneys willing to represent clients in class action litigation are adequately paid so that they and others like them will continue to take on such cases." *Connectivity Sys. Inc. v. Nat'l City Bank*, 2011 WL 292008, at *14

---

[5] This row is reproduced from the hourly rate chart above for ease of reference.

(S.D. Ohio Jan. 25, 2011). Had this case not settled, Plaintiff's counsel would have vigorously litigated the case without any promise of success and compensation. At every step of the litigation, Trinity could have succeeded. Therefore, Plaintiff's counsel was at great risk for non-payment for all work performed.

Moreover, Plaintiff's agreement with counsel allowed Plaintiff's counsel to seek a 40% contingency in the amount of all monetary value obtained by way of the claims. Ex. 2, Parmet decl. "The fee quoted to the client or the percentage of the recovery agreed to is helpful in demonstrating the attorney's fee expectations when he accepted the case." *Blanchard v. Bergeron*, 489 U.S. 87, 93 (1989) (citations omitted); *Barnes v. Winking Lizard, Inc.*, No. 1:18CV952, 2019 WL 1614822, at *5 n.1 (N.D. Ohio Mar. 26, 2019) (same). Yet Plaintiff's counsel's request for fees voluntarily limits that request to one-third of the settlement fund, reducing the fees they would be entitled to seek. That voluntary reduction from what counsel would be entitled to is evidence of the reasonableness of the fee. *See, e.g., Coach, Inc. v. Goodfellow*, No. 2:10-cv-02410-V, 2012 WL 12868277, at *3 (W.D. Tenn. May 22, 2012) ("[T]he fee seems reasonable considering that Coach states that the fees requested in this motion are less than the amount that their counsel would receive under the parties' contingency agreement."). This factor thus favors approval of the requested fees.

### 5.5.   Factor 4: Society's interest in compensating successful attorneys.

There is no doubt that "society certainly has an interest in incentivizing attorneys to assist in combatting illegal nonpayment of wages." *Fegley v. Higgins*, 19 F.3d 1126, 1134-35 (6th Cir. 1994). Plaintiff's counsel took on this matter to represent Atkinson and similarly situated workers in their wage claims against Trinity and in

so doing served society's interest. This factor supports awarding the requested fees to encourage qualified attorneys to represent employees in claims for unpaid wages.

### 5.6.    Factor 5: Complexity of the litigation

"Wage-and-hour collective and class actions are, by their very nature, complicated and time-consuming." *Swigart v. Fifth Third Bank*, No. 1:11-CV-88, 2014 WL 3447947, at *7 (S.D. Ohio July 11, 2014) (internal citation omitted). Had the case not settled, the parties faced complex motion practice, both over the merits, as well as on procedural matters, such as collective treatment.

### 6.    Plaintiff's counsel is entitled to recover reasonable costs and expenses.

"Under the common fund doctrine, class counsel is entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and in obtaining settlement, including expenses incurred in connection with document productions, consulting with experts and consultants, travel and other litigation-related expenses." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 535 (E.D. Mich. 2003). "Section 216(b) of the FLSA has been interpreted to include 'those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services." *Toliver v. Jbs Plainwell, Inc.*, No. 1:11-cv-302, 2015 WL 11255451, at *10 (W.D. Mich. Aug. 20, 2015) (internal quotation omitted), report and recommendation adopted as modified, No. 1:11-CV-302, 2016 WL 165031 (W.D. Mich. Jan. 14, 2016). Plaintiff's counsel seeks reimbursement of the following litigation expenses, which were reasonable and necessary for prosecuting this case:

| Cost | Amount |
|------|--------|
| Filing Fee | $402.00 |
| Service | $70.36 |
| Copies | $ - |
| Postage | $ 3.01 |
| Admission/PHV Fees | $300.00 |
| Mediation | $3,000.00 |
| Legal Research, background checks, e-signatures | $250.00 |
| Certificates of Good Standing | $20.00 |
| Reserve | $2,000.00 |
| **TOTAL** | **$4,045.37** |

E.   CONCLUSION

For these reasons, the Court should approve the Settlement Agreement.

Respectfully submitted,

*/s/ Matthew S. Parmet*

By: _____

**Matthew S. Parmet**
TX Bar # 24069719
PARMET PC
2 Greenway Plaza, Ste. 250
Houston, TX 77046
phone 713 999 5228
matt@parmet.law

**Michael Hanna, Esq.**
MI Bar # P81462
MORGAN & MORGAN, P.A.
2000 Town Center, Suite 1900
Southfield, MI 48075
Telephone: (313) 739-1951
Facsimile: (313) 739-1975
Email: mhanna@forthepeople.com

**Attorneys for Plaintiff**

## CERTIFICATE OF CONFERENCE

Prior to filing this motion, I conferred with Defendant's counsel, who confirmed Defendant is unopposed to the requested relief.

*/s/ Matthew S. Parmet*

_____

Matthew S. Parmet